IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ROBERT RAY COURTNEY            *
         Petitioner,
        vs.                                     *     CIVIL ACTION NO. DKC-06-2327

LISA J. W. HOLLINGSWORTH      *
         Respondent.
                                               ***

**MEMORANDUM**

Robert Ray Courtney ("Petitioner") is a U.S. Bureau of Prisons ("BOP") inmate currently confined at the Medical Center for Federal Prisoners in Springfield, Missouri.[1] On September 7, 2006, while confined at the Federal Correctional Institution in Cumberland, Maryland, he filed this "Writ to Vacate an Illegal Sentence...," which was construed as a 28 U.S.C. § 2241 petition for writ of habeas corpus.[2] Paper No. 1. Petitioner raises due process challenges to the disciplinary finding of guilt and the 21-day segregation sentence imposed by authorities at the Federal Correctional Institution in Greenville, Illinois ("FCI-Greenville"). *Id*. He claims that he was charged and found guilty of fighting with another inmate in violation of offense code 201, but maintains his "actual innocence" and claims that he was found guilty through the erroneous testimony of an unidentified informant and inmate Jesse Owens, who in fact struck Petitioner. *Id*.

---

[1] Petitioner is currently serving a 360-month sentence imposed following his conviction on charges arising from the sale of diluted, tampered, and black market cancer drugs. *See United States v. Courtney*, 240 F.Supp.2d 1052 (W. D. Mo. 2002).

[2] This court has personal jurisdiction over the matter due to Petitioner's confinement in Maryland at the time he filed the action. *See Braden v. 30th Judicial Circuit Court*, 410 U.S. 484, 496 (1973) (§ 2241 petitions typically heard by court having jurisdiction over petitioner's custodian).

Petitioner claims on March 14, 2004, he attempted to reserve and use a typewriter in the law library at FCI-Greenville. He avers that the typewriter had been loaned to inmate Owens from an inmate named "Abernathy" and, after discussions with Abernathy, he was given permission to take the typewriter after Owens was finished. Petitioner claims, however, that when Owens went to give the typewriter back to Abernathy, he informed Owens of this arrangement and signaled him to put the typewriter down. Paper No. 1. He asserts that when he turned away from Owens, Owens struck him on the right side of his face with his fist. *Id.* Petitioner maintains that there was no cursing or threatening language used during this incident. *Id.*

Petitioner admits that at first he told FCI-Greenville Officer Larson that he hit his face as a result of stumbling to avoid "ratting" on another inmate in front of other prisoners. *Id.* He claims that he subsequently told Officer Larson and Lt. Hutchcraft that he had been hit and had not fought. *Id.* Petitioner states that he was placed on segregation, appeared before Disciplinary Hearing Officer ("DHO") Kenneth Higginbotham on April 15, 2004, was found guilty of fighting by the DHO, and sanctioned with 21 days segregation and the loss of 27 days good conduct time ("GCT"). He asks that the record of the disciplinary action be expunged and that the revoked GCT be restored.

Petitioner generally claims a violation of his liberty interest in being free from the arbitrary and wrongful taking of his diminution credits. He raises a plethora of "due process" challenges to the disciplinary hearing process and decision. Petitioner claims that:

(1) his actions do not meet the definition of fighting;

(2) there were differences in the testimonies of inmate Owens and his unidentified witness, along with differences in Owens and his witness's testimony from that of three other witnesses;

(3) Owens's testimony regarding Petitioner's posture, position, and aggressiveness is unsupported given the evidence of Petitioner's injuries and the testimony of three other witnesses;

2

    (4)       the DHO's findings regarding Petitioner's credibility, given the conflicting stories he provided to prison staff, do not take into consideration the prison environment and the consequences of violating the "prison code" by ratting on another inmate;

    (5)       because he was restrained from behind, he could not use his notes at the disciplinary hearing and the "attending officer" refused to take them out of his shirt pocket;

    (6)       the DHO failed to ask Petitioner's witnesses, Owens, and the unidentified witness proposed questions;

    (7)       Petitioner did not have a staff representative to assist him at the hearing;

    (8)       the DHO terminated Petitioner's testimony;

    (9)       Special Investigative Administrator K.L. Ruble did not conduct a thorough investigative by interviewing Petitioner;

    (10)     the incident report, relied on by the DHO, contained a prejudicial statement;

    (11)     the Unit Disciplinary Committee ("UDC") failed to record the layout of the typing room and did not provide him a copy of the hearing report;[3]

    (12)     the DHO did not properly weigh witness testimony; and

    (13)     the DHO did not follow policy and procedure by documenting the reliability of the "confidential" informant (unidentified witness).

Paper No. 1 at 7-26.

Warden Hollingsworth has filed a Response to the Petition and Petitioner has submitted his Reply. Paper Nos. 12 & 15. The court has reviewed the Petition and papers and finds that an oral hearing is not necessary. *See* Local Rule 105.6. (D.Md. 2001). For reasons to follow, the Petition shall be denied and dismissed.

---

   [3]    Petitioner claims that the diagram and seating arrangement of the typing room would have shown that the unidentified witness could not have seen the incident and would have given greater credence to the testimony of his witness, Anthony King, who was sitting in close proximity to the incident. Paper No. 1 at 15.

o0o

The BOP has the authority to provide for the protection, instruction, and discipline of all persons convicted of offenses against the United States. *See* 18 U.S.C. § 4042(a)(3). The rules for inmate discipline are promulgated under 28 C.F.R. § 541.14-541.21, and provide for exhaustive process. If staff believe that a violation of a BOP regulation has been committed by an inmate, an incident report is prepared and the inmate is provided a written copy of the charges ordinarily within 24 hours of the time staff become aware of the inmate's involvement in the incident. *See* 28 C.F.R. §§ 541.14(a) & (b)(2) and § 541.15(a).

An investigating officer reads the charges to the inmate and requests a statement from the inmate, advising him of his rights. After completion of the investigation, materials are forwarded to the UDC for an initial hearing, which is ordinarily conducted within 3 working days. *See* 28 C.F.R. §§ 541.15(b). The inmate is entitled to be present at the hearing, except during the deliberations of the decision makers or when institutional security would be jeopardized by the inmate's presence, and he may make a statement and present documentary evidence on his own behalf. *See* 28 C.F.R. §§ 541.15(c) & (d).

After considering all of the evidence presented at the hearing, the UDC makes a decision based on at least some facts and, if there is conflicting evidence, based on the greater weight of the evidence. *See* 28 C.F.R. § 541.15(f). If the UDC find the inmate committed the prohibited act or a similar act if reflected in the incident report and determines that the violation is serious and warrants consideration for non-minor sanctions, the UDC refers the charges, without indication of findings as to the commission of the alleged violation, to the DHO for further proceedings. *See* 28 C.F.R. §§ 541.15(f)(1) & (3) and (h). If referred to the DHO, the UDC forwards copies of all

relevant documents to the DHO with a brief statement of the reasons for the referral, along with any recommendation for appropriate disposition if the DHO finds the inmate committed the act(s) charged.  *See* 28 C.F.R. § 541.15(h).  The UDC advises the inmate of his rights to be afforded at the hearing before the DHO and asks the inmate to indicate a choice of staff representative, if any, and the names of witnesses he wishes to be called to testify at the hearing and the nature of the testimony they are expected to provide.  *See* 28 C.F.R. § 541.15(i).  These witnesses are listed on the disciplinary hearing notice.  *Id*.

When appearing before the DHO, the inmate is entitled to: (1) make a statement and to present documentary evidence; (2) submit the names of requested witnesses and have them called to testify; and (3) present documents on his behalf.  *See* 28 C.F.R. § 541.17(c).  Witness testimony and documentary evidence may be presented provided the calling of witnesses and disclosure of documents does not jeopardize prison or inmate security.  *Id*.

The DHO considers all evidence presented at the hearing and bases his or her decision on at least some facts, and if there is conflicting evidence, on the greater weight of the evidence.  *See* 28 C.F.R. § 541.17(f).  The DHO makes a determination as to whether or not the inmate committed the charged act(s) or similar act(s) if reflected in the incident report and prepares a record of the proceedings which need not be verbatim.  *See* 28 C.F.R. §§ 541.17(f) & (g).  The record documents the advisement of the inmate's rights, the findings and decision of the DHO, the specific evidence relied on by the DHO, and includes a brief statement of the reasons for the sanctions.  *See* 28 C.F.R. § 541.17 (g).   The inmate is provided a written copy of the decision and disposition ordinarily within 10 days of the DHO's decision.  *Id*.

o0o

In reliance on Petitioner's base file and the declaration of DHO Higginbotham, Respondent Hollingsworth contends that Petitioner's due process rights were not violated. She provides the following information:

On March 15, 2004, staff at FCI-Greenville prepared an incident report documenting Petitioner's Code 201 violation. Paper No. 12, Ex. 2, Attachment A. The incident report indicated that Petitioner and inmate Jesse Owens became involved in a verbal altercation over the use of a typewriter and during the altercation, Owens struck Petitioner with a closed fist. *Id*.

After the incident, Petitioner told Lt. Hutchcraft and Ms. Lawson, an FCI-Greenville teacher, that he fell in the typing room. *Id*. He later recanted this story and reported that he was struck by Owens. *Id*., Ex. 2, Attachment C. The incident was investigated and on March 29, 2004, the charges were read to Petitioner and Petitioner's statement was taken. *Id.*, Ex. 2, Attachment A. On March 30, 2004, Lt. R. Horzewski advised Petitioner of his rights, completed his investigation, concluded that the issuance of an incident report was warranted, and referred the matter to the UDC for an initial hearing. *Id*.

The UDC considered the charges on April 1, 2004. *Id*. Petitioner was provided notice of his rights at the hearing and the UDC decided to refer the charge to the DHO for further hearing on the basis that the DHO may impose greater sanctions than the UDC. *Id.* Petitioner received documents giving him notice and informing him of his rights before a disciplinary hearing. *Id*., Ex 2, Attachment B.

Respondent claims that Petitioner originally requested FCI-Greenville Supervising Chaplain Phil Chapman as a staff representative, but waived staff representation on April 6, 2004. Paper No. 12, Ex. 2, Attachment B. Petitioner requested three witnesses at his disciplinary hearing, Milton

6

Buchanan, Anthony King, and George Hansel. *Id*. At the disciplinary hearing conducted on April 15, 2004, the DHO heard from all witnesses called by Petitioner and took Petitioner's statement. *Id*., Ex. 2, Higginbotham Decl. & Attachment C. Documentary evidence was submitted, comprised of Officer Nickerson's memorandum indicating that Petitioner had identified inmate Jesse Owens as the person who hit him. *Id*. Further, Lt. Hutchcraft's memorandum was presented, which indicated that he had interviewed Petitioner and Owens after the altercation. *Id*. In addition, a memorandum was submitted from Ms. Lawson. *Id*. The later two memoranda included information that Petitioner had originally stated that he sustained his injury by falling. *Id*.

On April 23, 2004, the DHO found Petitioner guilty of violating Code 201, Fighting With Another. *Id*. The DHO based the decision on the written statements of FCI-Greenville staff, Petitioner's statement, the testimony of Petitioner's witnesses, and the statement of Jesse Owens. *Id*. Respondent states that the DHO did not take evidence from a confidential informant, nor was a confidential informant used in making a decision with respect to the incident. *Id*. The DHO imposed a sanction of 21 days of disciplinary segregation and disallowed 27 days of GCT "in an effort to impress on Inmate Courtney, the gravity of his actions and hopefully deter him from such actions in the future." *Id*. The DHO report was delivered to Petitioner on May 4, 2004. *Id*.

According to DHO Higginbotham, to sustain a charge of Fighting With Another Person, an inmate does not have to physically assault the other person. *Id*., Ex. 2, Higginbotham Decl. He maintains that verbal altercations often escalate to physical confrontations and in an effort to maintain institutional safety, inmates involved in verbal altercations are charged with Prohibited Code 201, Fighting With Another Person. Paper No. 12, Ex. 2, Higginbotham Decl.

7

In his Reply Petitioner again challenges the use of the unidentified witness statement and alleges that the use of this witness's statement violates the Sixth Amendment. Paper No. 15. He further claims that his verbal disagreement with inmate Owens does not meet the "level" for him to be found guilty of fighting under Code 201. *Id*. In addition, Petitioner asserts that the submission of the diagram of the seating arrangement in the typing room would have prevented "...the mistaken and unjustified deprivation of life, liberty, or property" and his due process rights were violated when the attending officer refused to remove the diagram from his shirt pocket and the DHO refused to listen to his statements regarding the diagram. *Id*. at 2-3. He again explains the reasons for his providing different stories to FCI-Greenville staff and states that he has presented a valid defense of actual innocence through the declarations of three eye witnesses. *Id*. at 3-5.

o0o

Although prisoners do retain rights under the Due Process Clause, prison disciplinary proceedings are not part of a criminal prosecution and the full array of rights due a defendant in such proceedings does not apply. *See Wolff v. McDonnell*, 418 U.S. 539, 556 (1974) (citing *Morrissey v. Brewer*, 408 U.S. 471, 488 (1972)). In prison disciplinary proceedings where an inmate faces the possible loss of GCT he is entitled to certain due process protections. These include (1) advance written notice of the charges against him; (2) a written statement of the evidence relied on and the reasons for taking any disciplinary action; (3) a hearing where he is afforded the right to call witnesses and present evidence when doing so is not inconsistent with institutional safety and correctional concerns, and a written decision; (4) the opportunity to have non-attorney representation when the inmate is illiterate or the disciplinary hearing involves complex issues; and (5) an impartial decision-maker. *See Wolff*, 418 U. S. at 564-571. There is no constitutional right to confront and

cross-examine witnesses or to retain and be appointed counsel. *See Baxter v. Palmigiano*, 425 U.S. 308, 322-23 (1976); *Brown v. Braxton*, 373 F.3d 501, 505-06 (4th Cir. 2004). As long as the hearing officer's decision contains a written statement of the evidence relied upon, due process is satisfied. *See Baxter*, 425 U.S. at 323 n.5.

The court finds that the disciplinary process associated with petitioner's institutional charge meets the aforementioned minimum due process procedural requirements. Petitioner received advanced written notice of the charges on March 30, 2004, more than 24 hours prior to the hearings before the UDC and DHO. In addition, Petitioner was advised of his rights and received formal notice of the UDC decision and advanced notice of the DHO hearing.

Further, the DHO submitted a written statement as to the evidence relied on to determine that Petitioner violated Code 201, and offered specific reasons why the sanctions were imposed. Also, Petitioner was given the opportunity to call witnesses and to present documentary evidence. Petitioner requested three witnesses and these individuals (inmates Buchanan, King, and Hansel) did in fact testify on his behalf, but did not necessarily provide "exculpatory" testimony to exonerate Petitioner from the Code 201 charge.[4]

As the fact-finder the DHO asks specific questions to elicit testimony and to obtain information upon which to base his decision. While Petitioner complains that the DHO did not ask witnesses the questions he wanted asked, Respondent correctly observes that such action is not required under *Wolff*. The record also shows that Petitioner was afforded the right to present evidence. Petitioner complains that a diagram of the typing room was not submitted in evidence.

---

[4] DHO Higginbotham claims that one of Petitioner's witnesses, inmate King, testified that Petitioner was verbally arguing with Owens, and this evidence is sufficient to sustain a disciplinary infraction. Paper No. 12, Ex. 2 at Higginbotham Decl.

According to DHO Higginbotham, the DHO routinely takes documents before and during disciplinary hearings, but he maintains that even if he did not see the diagram of the typing lab it was not material to his decision as he is well-familiar with the layout of the typing room given the 19 years he has worked at FCI-Greenville.

Petitioner was also given the opportunity to request as staff representative, did pick a member of the FCI-Greenville staff to advise him, but complains that Chaplain Chapman refused to ask the questions Petitioner wished to pose and did not attend the DHO hearing. *Wolff* does not impose such a requirement. Indeed, the staff representative's duties per BOP disciplinary proceeding regulations is to meet with the charged inmate, to interview requested witnesses where appropriate, and to present favorable evidence to the DHO. *See* 28 C.F.R. § 541.17(b). According to Petitioner, he was able to meet with two FCI-Greenville staffers prior to the hearing. Paper No. 1 at 12-13. The fact that Chaplain Chaplain refused to ask Petitioner's questions and did not attend the hearing does not violate the dictates of due process. In any event, Petitioner does not refute the record entry which indicates that he waived the appearance of a staff representative on the date of the DHO hearing.

The court further finds no evidence of bias or prejudice on the part of the DHO when conducting the hearing and reaching his conclusions. Higginbotham was impartial- he did not prepare the disciplinary report, investigate the infraction, conduct the UDC review, refer the charges, or testify as a witness. Petitioner makes no specific allegations that the DHO was biased against him, nor does the record suggest that the proceedings against Petitioner were tainted.[5]

---

[5] Petitioner complains that the evidence to sustain the charge included the statement from an unidentified informant and violates his Sixth Amendment rights. He appears to be referencing the DHO report excerpt which discusses the statement of inmate Owens's witness. Paper No. 12, Ex. 2 at Higginbotham Decl., Attachment C. The court finds no merit to this allegation. A confidential informant

10

o0o

Substantive due process is satisfied if the disciplinary hearing decision was based upon "some evidence." *Superintendent, Mass. Correctional Institute v. Hill*, 472 U.S. 445, 455 (1985). Federal courts do not review the correctness of a disciplinary hearing officer's findings of fact. *See Kelly v. Cooper*, 502 F.Supp. 1371, 1376 (E.D. Va. 1980). The findings will only be disturbed when unsupported by any evidence, or when wholly arbitrary and capricious. *See Hill*, 472 U.S. at 456; *see also Baker v. Lyles*, 904 F.2d 925, 933 (4th Cir. 1990). As long as there is some evidence in the record to support a disciplinary committee's factual findings, a federal court will not review their accuracy.[6]

The proceedings before this court are not a retrial of the incidents and the undersigned finds that the DHO decision was based upon "some evidence."[7] DHO Higginbotham affirms that in finding some evidence to sustain the Code 201 charge, he relied on: (1) statements made by investigating officer Hutchcraft; (2) statements made by Petitioner, and (3) statements of Petitioner's own witnesses. In addition, he considered memoranda provided by FCI-Greenville staff members Nickerson and Lawson and the statement of inmate Owens. He addressed Petitioner's believability,

---

was not used in Petitioner's case. The statement referenced by Petitioner involved an inmate who apparently was called and appeared as Owens's witness at Owen's disciplinary hearing which, according to the DHO, involved overlapping evidence. Although the statement was mentioned in Petitioner's DHO report, the Code 201 violation was sustained on other evidence and without the use of the witness's statement. *Id*.,

[6] The role of the district court is not to afford a *de novo* review of the disciplinary board's factual findings. The district court should simply determine whether the decision was supported by some facts. The sole and only issue of constitutional substance is whether there exists any evidence at all, that is, whether there is any basis in fact to support the action taken by the prison officials. Otherwise the federal court would assume the task of retrying all prison disciplinary disputes.

[7] Petitioner seemingly argues that prison officials violated his right to due process by finding that his acts violated the prison rule against fighting with another person. Again, due process requires only the existence of "some evidence" to support the revocation of good time credits. *See Hill,* 472 U.S. at 455.

finding that his credibility was weakened by the fact that he gave FCI-Greenville staff two versions of the incident. Higginbotham maintains that the statements led him to believe that a verbal altercation took place and it escalated with inmate Jesse Owens striking Petitioner. The DHO avers that he imposed the sanctions to make an impression on Petitioner and to deter future actions.[8] While these facts presented are not one hundred percent conclusive of whether Petitioner violated Code 201, they are adequate facts upon which to base a prison disciplinary conviction. They constitute "some" facts upon which the DHO was entitled to rely in finding Petitioner guilty of fighting with another person.

o0o

For the aforementioned reasons the court concludes that Petitioner's April, 2004 disciplinary hearing process comports with due process. The DHO decision shall stand. Habeas relief shall be denied. A separate Order follows.


Date:   April 9 , 2007                                       /s/
                                                    DEBORAH K. CHASANOW
                                                    United States District Judge

---

[8] Under applicable regulations, upon a finding that an inmate has violated Code 201, a DHO may: direct that the inmate forfeit non-vested GCT up to 50% or 60 days whichever is less; disallow ordinarily between 25 and 50% (14-27 days) of GCT available for a year; recommend disciplinary transfer; place the inmate in disciplinary segregation for up to 30 days; withhold statutory good time; and/or deny privileges. *See* C.F.R. § 541.13